Loring, J.,
delivered the opinion of the court:
The petitioners claim of the United States rent for the house at the corner of I and 19 th street, Washington, and the court finds the facts to be—
In June, 1861, the petitioners leased the house to the United States for such time as they should require it at $160 per month, to be returned in like good order and condition, ordinary wear and tear excepted.
The United States occupied and paid the rent for the house till February 13, 1865, and then proffered to return it to the petitioners, who-declined to receive it because it was not in tenantable order, and they required that the United States should repair it. This the United States did, and the repairs were completed on the 28th of March, 1865.
The petitioners demanded of the United States rent for the house at the rate of $160 per month from the 13th of February to the 28th of March, while the house was undergoing repairs, and this the United States refused to pay.
While the house was under repairs, and on the 27th of March, 1865, by another contract in writing between the petitioners and the United States, the house was leased to tho United States from the 1st of April, 1865, at the rate of $2,500 per year, and was under said contract held and occupied 18 months by the United States.
On the 7th July, 1865, while the house was in the possession of the United States and occupied by them, it was ordered by the Quartermaster General that the house be taken up for the United States and rent paid for it at the rate of $160 per month while occupied by the government.
On or about the 6th of October, 1866, the United States paid the petitioners rent for the occupation of the house from 1st April, 1865, to 1st of October, 1866, at the rate of $160 per month.
A.nd the petitioners then demanded of the United States the additional rent at the rate of $2,500 per year, amounting to $870, and this the government refused to pay.
*311 The legal title of the premises during the contracts above stated was in Mr. Phillips, trustee for Mrs. Hoover, under the will of her father; and the petitioners were authorized by the trustee to lease the premises and receive the rents for their benefit.
And $2,500 per year was a reasonable rate of rent for the premises from the 18th of April, 1865, to the 1st of October, 1866.
As to the rent claimed for the time the house was undergoing repairs, the premises were withheld from the petitioners and 'held by the United States as a consequence of their breach of their engagement to return them in tenantable condition, and the loss incident to that must be borne by the United States, and not by the petitioners.
As to the rent claimed as due from the 1st of April, 1865, to the 1st of October, 1866, the time of the occupancy is found by the payment of $160 per month for that time. And as to the rate of rent the contract for $2,500 per annum is expressed in writing. And the Quartermaster General had no right or authority to abrogate that contract by taking up the premises as private property taken for public use, for there is no evidence of the necessity that can alone justify that exercise of power.
Whoever claims or depends on the agency of a public officer must prove the agency, and where that is conditional, must prove the circumstances on which it is conditioned, and this can always be done at the trial, for the officer can be called to show the circumstances and reasons on which he acted. An officer’may take private property for public use when the circumstances make it a necessity for the public good, but the necessity must be shown, for, to assume it on the officer’s action and dispense with its proof, would be tantamount to dispensing with its existence and subject the United States in all cases. The rule for such cases is given in Mitchell v. Harmony, 13, How., 134, 1851, by the Supreme Court as follows: “It is the emergency that give's the right, and the emergency must be shown to exist before the taking can be justified. In deciding upon this necessity, however, the state of the facts as they appeared to the officer at the time he acted must govern the decision; for he must necessarily act upon the information of others as well as his own observation. * * * But it is not sufficient to show that he exercised an honest judgment and took the property to promote the public good. He must show by proof the nature and character of the emergency, such as he had reasonable grounds to believe it to be, and it is then for the jury to say whether it was so pressing as not to admit of delay, and the occasion such, according to the information on which he acted, that pri- *312 yate rights must for the time give way to the common and public good.” That the action of the Quartermaster General had for its purpose the public good and that only, is unquestionable, but there is nothing in the evidence that brings his action within the rales laid down by the Supreme Court.
As to the legal title of the premises being in Mr. Phillips, trustee, this action is not on the title, but on the contracts above set forth. These the petitioners were authorized to make by the trustee, and if they could make the contracts they may sue upon them, and as lessees the United States cannot question the title of their lessors.
On the facts stated the court finds that the petitioners are entitled to recover from the United States—
1st. Rent from the 13th of February to 28th of March, inclusive, $226 18.
2d, For balance of rent unpaid from 1st of April, 1865, to 1st of October, 1866, at the rate of $2,500 per year, less the amount paid, $870 ; making in all $1,095 18; for which judgment is to be entered for the petitioners.